# Exhibit B

Rick J. Sutherland (USB # 3162)
MARK D. TOLMAN (USB # 10793)
ELIZABETH BUTLER (USB # 13658)
**JONES WALDO HOLBROOK & McDONOUGH PC**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

*Attorneys for Plaintiff Weir Slurry Group, Inc.*

## IN THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| Weir Slurry Group, Inc., d/b/a Weir Minerals Linatex, | **VERIFIED COMPLAINT** |
| Plaintiff, | Case No. _____ |
| vs. | Judge _____ |
| Kayleen Lee, and John Does 1-10 | |
| Defendants. | (This matter qualifies as a Tier 3 controversy as defined by Utah Rule of Civil Procedure 26(c)(3)) |

Plaintiff, Weir Slurry Group Inc., d/b/a Weir Minerals Linatex, by and through its
undersigned counsel, JONES WALDO HOLBROOK & McDONOUGH PC, hereby complains against
Defendants as follows:

1


EXHIBIT
20

## NATURE OF ACTION

1.      This action is brought by Plaintiff against Defendants for relief arising out of Defendants' misappropriation of Plaintiff's trade secrets and confidential and proprietary information.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff, Weir Slurry Group Inc., is a corporation organized and existing under the laws of the state of Wisconsin authorized to and doing business in Salt Lake County state of Utah under the assumed name of Weir Minerals Linatex ("Weir Minerals").

3.      Defendant Kayleen Lee ("Defendant Lee") is an individual residing in Woods Cross Utah.

4.      John Does 1-10 are individuals and or entities that were involved in the wrongful actions described herein, whose identities are currently unknown.  Plaintiff reserves the right to amend to name any such individuals or entities discovered hereafter. (All of the Defendants, including the John Doe Defendants, may be referred to hereinafter jointly as "Defendants").

5.      This Court has jurisdiction over the subject matter of this action under, among other authorities, Utah Code Ann. § 78A-5-102.

6.      Venue is proper in this County pursuant to, among other authorities, Utah Code Ann. § 78B-3-307.

7.      The damages prayed for in this complaint exceed $300,000; therefore, this is a "Tier 3" case for purposes, and within the meaning, of Utah R. Civ. P. 26(c) (3).

2

1150169.1

## GENERAL ALLEGATIONS

8.     Weir Minerals is engaged in the business of developing, designing, manufacturing and marketing rubber related products and providing related services to various customers throughout the world for primarily industrial, oil field and mining applications.

9.     Defendant Lee was originally hired effective October 3, 2011 by Weir Minerals to work as a chemist in its Salt Lake facility. Her offer of employment, dated August 25, 2011 (attached as Exhibit A), was contingent upon her execution of Weir Minerals' Non-Competition, Confidentiality and Invention Agreement which Defendant Lee executed on September 7, 2011 (attached as Exhibit B).

10.     In Defendant Lee's position as a chemist for Weir Minerals, Defendant Lee was a Category C employee meaning she held the highest security clearance with Weir Minerals. (See Exhibit B) As such she was given training in and access to virtually all of Weir Minerals' proprietary and confidential information relating to chemical processes, formulae, compositions, methods, product recipes and research and development data. Defendant Lee was privy to the formulation and implementation of product development strategies and practices, all of which are of the most sensitive and confidential nature and constitute trade secrets and proprietary information of Weir Minerals.

11.     The trade secrets and proprietary information which Defendant Lee had knowledge of and access to, included compilations, formulae, programs, methods, techniques, product recipes and/or processes, that derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who

3

can obtain economic value from its disclosure or use. Such trade secret and proprietary information has been the subject of efforts that are reasonable under the circumstances to maintain its secrecy as set forth in paragraphs 13-15 below.

12.     During the course of her employment with Weir Minerals, Defendant Lee did review and utilize various trade secrets and highly confidential and proprietary information of Weir Minerals to perform her employment duties as a chemist, and had access to additional highly confidential and proprietary information all of which constitute Weir Minerals' trade secrets.

13.     Defendant Lee was informed and knew of the confidential and proprietary nature of Weir Minerals' trade secret information and of her duty to maintain its secrecy and limit its use. Defendant Lee's knowledge that she was obligated to maintain secrecy and her duty to do so is apparent from several sources including (i) Defendant Lee's initial employment offer making her employment subject to and conditioned upon her execution of and compliance with her obligation and commitment to maintain the confidentiality of Weir Minerals' proprietary information, (ii) Weir Minerals' internal policies and practice of only employees having a "need to know" being given access to such information and maintaining a separate secure computer drive to control such access, (iii) Weir Minerals' use of Confidentiality Agreements with its employees, including Defendant Lee, to protect such information, (iv) Weir Minerals' policies and Code of Conduct prohibiting retention, use or disclosure of such information, and (v) Defendant Lee's training in and admonitions regarding her duties and obligations of confidentiality.

4

14. Weir Minerals' internal policies relating to the trade secret information exploited by Defendant Lee provide that she will not remove any proprietary information from Weir Minerals' facility or otherwise use or disclose any such information. These policies which Defendant Lee was subject to, trained in and familiar with, include:

a. The Weir Group IT Security Policy which requires supervisor approval before uploading or downloading to or from any company system, mandates the shredding of paper copies prior to disposal, provides a prohibition against removal of any data without prior written approval, demands constant protection and access control of all sensitive, vulnerable or confidential information, and requires the maintenance of an auditable trail and protection against copying or unauthorized access when outside transmission is approved.

b. The Weir Group Information Technology Policy which provides that no emails should be transmitted outside the company which contain versions of electronic documents as attachments.

c. The log-in screen for the secure server to which Defendant Lee had access as a category C employee provides that by logging into the domain, she is bound by all legal conditions and policies of the Company, that all data on the domain and the intellectual property rights in that data are the property of the Company and that misuse or abuse of the data will subject an employee to legal action.

d. Weir Minerals' Code of Conduct applicable to all employees, including Defendant Lee, requires that all Company confidential information be kept safe and may

5

only be shared on a 'need to know' basis. It also prohibits copying of documents or materials containing confidential information unless authorized to do so.

15.     Weir Minerals' Non-Competition, Confidentiality and Inventions Agreement with its employees provides that no employee will directly or indirectly use or disclose any of Weir Minerals' confidential or proprietary information. Defendant Lee signed such an agreement with Weir Minerals on September 7, 2011 (See Exhibit B).

16.     On or about February 24, 2014, Weir Minerals discovered that Defendant Lee had modified the properties of her internal company email to automatically forward to her personal outside gmail account incoming company emails containing certain key words relating to highly sensitive product research and development of a new technology being developed by Weir Minerals as well as any correspondence that contained her name in the "to" line or the "cc" line. By undertaking these prohibited modifications, Defendant Lee insured that virtually all emails would be automatically forwarded to her personal outside gmail account and particularly those relating to the development of Weir Minerals' new technology. This resulted in hundreds of internal restricted and sensitive emails, many of which contained proprietary and highly confidential attachments, being forwarded to Defendant Lee's gmail account in only the few weeks immediately preceding Weir Minerals' discovery of her actions. These modifications, and the transmission of the emails, were unauthorized and are in violation of the confidentiality obligations Defendant Lee owes to Weir Minerals.

17.     When, in the course of its investigation, Weir Minerals found that Defendant Lee had forwarded emails into her personal gmail account, Weir Minerals reviewed her "sent" folder

6

1150169.1

on the Company system and found that all emails had been deleted from the sent folder which Weir Minerals believes was part of an effort to conceal Defendant Lee's misappropriation.

18.     In addition, in violation of Company policy, Defendant Lee failed to shred hard copies of Company documents and instead removed the documents from Weir Minerals' premises.

19.     As a result of Defendant Lee's improper, illegal and wrongful conduct, Weir Minerals has been damaged in that its filing of the Patent application for its new process may be compromised, Weir Minerals has suffered loss of competitive advantage, loss of future business, loss of reputation and creditability and has incurred additional costs and expenses in attempting to protect its Trade Secrets, its customers and employees from Defendant Lee's unlawful and wrongful conduct all of which damages are, as yet, not fully ascertained but which Weir Minerals will prove at the trial of this matter.

20.     Defendant Lee's conduct complained of herein was and is willful and malicious and, accordingly, Weir Minerals is further entitled to recover exemplary damages as provided by Utah Code Section 13-24-4 (2) and attorney fees pursuant to Section 13-24-5. Weir Minerals is further entitled to recover its attorney fees pursuant to the Confidentiality Agreement signed by Defendant Lee as referred to above.

21.     Weir Minerals has demanded that Defendant Lee immediately return all emails that she forwarded to her personal gmail account from the Company's email system, and to make an accounting of all third parties who may have had access to or to whom she has sent such information. Defendant has not complied with these requests.

7

22.     Weir Minerals is suffering continuing and irreparable injury, for which it has no adequate remedy at law, as a consequence of Defendant Lee's misappropriation of its trade secrets, and is therefore entitled to injunctive relief preventing Defendant Lee from further engaging in such conduct as provided for by Utah Code Section 13-24-3, and the Confidentiality Agreement signed by Defendant Lee referred to above.

### FIRST CAUSE OF ACTION
**Breach of Contract**

23.     Weir Minerals realleges and incorporates herein all of the allegations of paragraphs 1-22 above as though fully set forth hereat.

24.     Defendant Lee has a contract with Weir Minerals by which she agreed, among other things, not to ever disclose or use confidential or proprietary information belonging to Weir Minerals except in connection with her duties as an employee of Weir Minerals on behalf of Weir Minerals.

25.     Defendant Lee, by engaging in the conduct alleged herein, has breached the terms and conditions of the contract entered into between Defendant Lee and Weir Minerals and she is therefore liable to Weir Minerals for all damages sustained by Weir Minerals as alleged above.

### SECOND CAUSE OF ACTION
**Misappropriation of Trade Secrets**

26.     Weir Minerals realleges and incorporates herein all of the allegations of paragraphs 1-25 above as though fully set forth hereat.

27.     Weir Minerals, through long and extensive research and development, and the expenditure of a considerable amount of time, effort and hundreds of thousands of dollars, has

8

developed commercially valuable trade secrets and confidential and proprietary information concerning the processes, formulae, compositions, product recipes, methods and research and development data, as alleged above.

28.     Among other trade secrets and confidential and proprietary information, Weir Minerals has developed formulas, specifications, processes, techniques, pricing, and the like, concerning, among other things, the formulation and implementation of product development.

29.     Weir Minerals has embodied those secrets and that information in its written materials, processes, specification sheets, and recipes, all of which constitute valuable commercial assets.

30.     Weir Minerals has taken a number of steps to maintain the secrecy and confidentiality of this information, including limiting access to such information and imposing restrictions regarding use and disclosure on all those who do use, have access to or have knowledge of the information. Weir Minerals' efforts to maintain the secrecy of this information are consistent with industry standards.

31.     Weir Minerals' secrets and information derive independent economic value from not being generally known to others in the industry, who can obtain economic benefit from the disclosure or use of the secrets and information.

32.     During the time Defendant Lee was employed by Weir Minerals, much of Weir Minerals's secret and confidential information was entrusted to Defendant Lee in the performance of her duties for Weir Minerals. Pursuant to the Non-Competition, Confidentiality and Invention Agreement and other policies of, and admonitions from, Weir Minerals, Defendant

9

Lee knew that the information was confidential and not to be transferred outside the company, that it was a valuable commercial asset of Weir Minerals and that Weir Minerals expended much time, effort and money in developing the confidential and secret information.

33. As a chemist for Weir Minerals, Defendant Lee was a "Category C" employee having the highest security clearance and was particularly knowledgeable concerning Weir Minerals's confidential information and Trade Secrets. (See Exhibit B) In the course of her work for Weir Minerals, Defendant Lee worked daily with this information in the formulation and implementation of product development strategies and practices.

34. Defendant Lee, by automatically forwarding to her personal outside gmail account Weir Minerals' proprietary, confidential Trade Secret information, devised and implemented a scheme the primary intent and purpose of which was to misappropriate Weir Minerals' Trade Secrets and confidential information and, on information and belief, use the secrets and information to her own commercial advantage.

35. Defendant Lee's use and exploitation of Weir Minerals' trade secrets and confidential information was done willfully and maliciously:

a. with full knowledge of the secret, confidential and commercially valuable nature of said information;

b. with full knowledge that said information was being used and exploited without Weir Minerals' consent;

c. knowing that said information was acquired by improper means;

d.      resulting in substantial damage to Weir Minerals in Salt Lake County, Utah, and throughout the world.

e.      resulting in continuing irreparable damage to Weir Minerals, leaving Weir Minerals without an adequate remedy at law.

36.     Weir Minerals is entitled to appropriate injunctive relief pursuant to Utah Code Section 13-24-3 as well as under the Non-Competition, Confidentiality and Invention Agreement.

37.     Weir Minerals is entitled to damages including both the actual loss and the unjust enrichment caused by defendants' misappropriation, and exemplary damages, as provided in Utah Code Section 13-24-4.

38.     Weir Minerals is entitled to an award of reasonable attorneys fees pursuant to Utah Code Section 13-24-5 and the Non-Competition, Confidentiality and Invention Agreement.

39.     Weir Minerals seeks relief on this cause of action as more fully set forth below in its prayer for relief.

### THIRD CAUSE OF ACTION
### Breach of Duty of Loyalty

40.     Weir Minerals realleges and incorporates herein all of the allegations of paragraphs 1-39 above as though fully set forth hereat.

41.     As an employee of Weir Minerals, Defendant Lee owed Weir Minerals a duty of loyalty not to act contrary to Weir Minerals' legitimate business interests.

42.     As described above, Defendant Lee breached that duty of loyalty when she misappropriated Weir Minerals' confidential and trade secret information.

11

43.     As a direct and proximate result of Defendant Lee's breach of duty of loyalty, Weir Minerals has been injured and is entitled to recover damages of Defendant Lee in an amount to be determined at trial, plus interest as allowed by law.

44.     Additionally, in order to prevent Defendant Lee from profiting from her breaches of her duty of loyalty, Defendant Lee should disgorge the wages received from Weir Minerals during the period of her disloyalty in an amount to be determined at trial, plus interest.

45.     Furthermore, the Court should issue a Temporary Restraining Order and Preliminary Injunction as more fully set forth in Weir Minerals' prayer for relief below.

46.     Finally, Weir Minerals is also entitled to an award of punitive damages because Defendant Lee's misappropriation of Weir Minerals' confidential and trade secret information was the result of the Defendant Lee's willful or malicious conduct, or conduct that manifested a knowing and reckless indifference toward, and disregard of, the rights of Weir Minerals.

### FOURTH CAUSE OF ACTION
**Violation of Computer Fraud and Abuse Act – 18 U.S.C. § 1030**

47.     The allegations in all preceding paragraphs are hereby incorporated by reference.

48.     Weir Minerals' computers and computer systems are "protected computers", which are used in or affect interstate or foreign commerce or communication, under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2).

49.     By her wrongful actions described above, Defendant Lee intentionally accessed without authorization, or in excess of authorized access, Weir Minerals' protected computers and obtained information therefrom.

50.    By her wrongful actions described above, Defendant Lee knowingly and with intent to defraud accessed Weir Minerals' protected computer system, and without authorization and/or in excess of authorized access, forwarded this information from Weir Minerals' protected computer system to her personal gmail address.

51.    By her wrongful actions described above, Defendant Lee furthered the intended fraud, obtained unauthorized use of Weir Minerals' protected computer system, and obtained, without authorization and/or in excess of authorized access Weir Minerals' confidential, proprietary and Trade Secret information, the value of such exceeding $5,000 in any one year period.

52.    The wrongful conduct of Defendant Lee has caused damages and loss to Weir Minerals resulting in continuing irreparable damage to Weir Minerals, leaving Weir Minerals without an adequate remedy at law.

53.    The activity of Ms. Lee constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and Weir Minerals is entitled to injunctive relief and full compensatory damages under the Act.

54.    Weir Minerals seeks relief on this cause of action as more fully set forth below in its prayer for relief.

## FIFTH CAUSE OF ACTION
### Injunctive Relief

55.    Weir Minerals realleges and incorporates herein all of the allegations of paragraphs 1-54 above as though fully set forth hereat.

13

56.     Defendant Lee's actions as alleged herein are causing and will continue to cause irreparable harm to Weir Minerals.

57.     Defendant Lee will not be injured by the grant of injunctive relief prohibiting further misappropriation of Weir Minerals' trade secrets.

58.     The granting of injunctive relief would serve the public interests in favor of protecting trade secrets and preventing misappropriation and unfair competitive practices.

59.     Weir Minerals is likely to prevail on the merits of its claim of misappropriation.

60.     Weir Minerals is entitled to injunctive relief pursuant to Utah Code Section 14-24-3 as well as in accordance with the provisions of the Confidentiality Agreement entered into between Weir Minerals and Defendant Lee.

## PRAYER FOR RELIEF

**WHEREFORE,** Weir Minerals prays for judgment against Defendants as follows:

1.      1. For injunctive relief ordering Defendant Lee to (i) cease and desist from retaining, using, disclosing or otherwise misappropriating, directly or indirectly, Weir Minerals' trade secrets and other confidential and proprietary information, (ii) identify all persons to whom the material or information has been disclosed or by whom it has been viewed, accessed or used, (iii) identify all third parties who may have viewed, accessed or used Weir Minerals' confidential and proprietary information; and (iv) return all documents, files, including electronic files and documents, containing, referring to or incorporating the information or material that has been wrongfully obtained.

14

2. For an award granting to Weir Minerals monetary damages for all loss of business, loss

of reputation and credibility and all other monetary damages to which Weir Minerals is entitled,

including compensatory, consequential, incidental, exemplary and punitive damages.

3. For all costs and attorney fees incurred in conjunction with this action.

4. For such other relief as the Court deems just and equitable.

DATED this 7th day of March, 2014.

JONES WALDO HOLBROOK & McDONOUGH PC

By: _/s/_ Mark D. Tolman_____
Rick J. Sutherland
Mark D. Tolman
Elizabeth Butler
*Attorneys for Plaintiff Weir Slurry Group Inc.*

## **VERIFICATION**

STATE OF UTAH       )
                         : ss.
COUNTY OF SALT LAKE  )

     I, Julene Persinger, having been first duly sworn, have read the foregoing Verified

Complaint, and do hereby verify that the factual statements contained therein are true, based on

my personal knowledge, information, and/or belief, and upon my position as the Human

Resource Manager for Weir Minerals Linatex.  I also verify that I believe that the relief

requested to be fair and reasonable under the facts of this case, and that I am authorized by Weir

Minerals Linatex to execute this document upon its behalf.

     DATED this ____ day of March, 2014.



                         Julene Persinger

   On the 7th day of March, 2014, personally appeared before me Julene Persinger, the

signer of the foregoing instrument, who duly acknowledged to me that she executed the same.

                         NOTARY PUBLIC

> Jan S. Mahoney
> NOTARY PUBLIC - STATE OF UTAH
> My Comm. Exp. 1/19/2015
> Commision # 605137

14

# EXHIBIT A

**WEIR SLURRY GROUP INC.**
**WEIR MINERALS LINATEX – Salt Lake City**
3459 S 700 W        Tel: 801-574-2100
Salt Lake City, UT 84119   Fax: 801-261-5587
www.weirminerals.com



August 25, 2011


Kayleen Lee
Lee.Kayleen@gmail.com

Dear Kayleen,

Weir is pleased to offer you employment with a team of some of the finest and most highly respected manufacturers anywhere. The following outlines the details of the at will, exempt position offered you through Weir Minerals Linatex – Salt Lake City. This offer is contingent upon you completing the standard Weir Non-Competition, Confidentiality and Invention Agreement, as well as successfully completing a pre-employment physical/drug screen, credit check and criminal background check.

Position offered:        Chemist

Start date:              *Oct 3, 2011*

Position includes:

    1. Compensation:   $63,000 annually

    2. Health Insurance:  Upon your date of hire, you will be eligible to participate in the Company's self funded medical plan. Details will be provided to you upon hire. The premium costs to you range from $47.00 to $146.00 per check depending on coverage category.

    3. Dental Insurance:  Upon your date of hire, you will be eligible to participate in the Company's dental plan. Details will be provided to you upon hire. The premium costs to you range from $2.82 to $9.92 per check depending on coverage category.

    4. Life Insurance:    Effective upon your date of hire, you will have one times your annual salary in term life insurance (not to exceed $50,000). If you desire additional coverage for yourself, voluntary employee paid life insurance is available.

    5. AD&D            Effective upon your date of hire, you will have one times your annual salary in term accidental death and dismemberment insurance (not to exceed $50,000). If you desire additional coverage for yourself or

- 1 -

coverage for your family, voluntary employee paid AD&D insurance is available.

6. 401(K) Plan: You will be eligible to participate the month following your start date. Your contributions are 100% vested; Company matching contributions are vested on a graduating scale.

7. Vision (Voluntary): Upon your date of hire, you will be eligible to participate in the Company's vision plan. The premium costs to you range from $2.48 to $7.24 per check depending on coverage category.

8. Vacation Time: You will receive three (3) days of vacation on date of hire. On January 1, 2012, you will receive ten (10) days of vacation, and continue according to the outlined company vacation policy. Should you separate from the company before your first year anniversary date, you will not be eligible for any vacation payout.

9. Holiday Pay: You will be paid for the following ten holidays: New Year's Day, President's Day, Memorial Day, Independence Day, *Pioneer Day, Labor Day, Thanksgiving Day, Day after Thanksgiving, Christmas Eve, and Christmas Day. *Pioneer Day is observed in the state of Utah, other employees will receive a floating holiday.

10. Sick Leave: You will be awarded one month of salary continuance upon your start date. Sick leave is intended to be used for illnesses.

11. Education: After six months of service you will be eligible to participate in the Education Assistance program. Reimbursable expenses include tuition, registration fees, required student fees, lab fees, and required textbooks. Reimbursement is 80% for C's and 100% for A's and B's.

12. Review: You will be evaluated for performance and fit at 90 days and again at the completion of the probationary period of 6 months.

The future existence and terms of the above plans are subject to modification and change at the Company's discretion.

A copy of The Weir Group Code of Conduct is available on the Company intranet. You are required to familiarize yourself with the contents of the Code as it is a condition of your employment that you observe the rules and procedures therein and any supporting policies and, in particular, you must not engage in any form of corruption, give a facilitation payment or offer or accept gifts and hospitality in breach of the Company's guidelines. Failure to comply with the Code will be treated as gross misconduct on your part. The Code applies to all staff including those in the workshop, office and in field services.

**Bribery and Corruption**

The company treats any instances of bribery and corruption very seriously and will treat any instances as gross misconduct. Corruption includes, but is not limited to, bribery, extortion, fraud, deception, collusion, cartels, abuse of power, embezzlement, trading in influence, facilitation payments, money laundering and similar criminal activities.

The employee gives undertakings that during the course of their employment
- he/she will take all reasonable steps not to become involved in any corruption
- He/she will comply with the company's Code of Conduct and policies, issued from time to time.

We are confident that you will be an outstanding representative for Weir Minerals Linatex – Salt Lake City and a talented resource to ensure future success. If you have any further questions, please do not hesitate to contact me at (801) 574-2180.

Sincerely,


Julene Persinger
HR Manager



I, _Kayleen Lee_____ have read the preceding offer letter and agree to the terms of employment offered by Weir Minerals Linatex – Salt Lake City.


_Kayleen Lee_                        _7 Sept 2011_
Signed                                    Date

# EXHIBIT B

## NON-COMPETITION, CONFIDENTIALITY AND
## INVENTION AGREEMENT (EMPLOYEES)

This Agreement is made by and between the undersigned employee or applicant for employment ("Employee") and  Weir Minerals  ("Company") at the Company's principal place of business.  In consideration for Employee's employment with the Company and the providing of Confidential Information (defined below) to the Employee pursuant to the terms of this Agreement, Employee agrees as follows:

1. *Definitions.*  As used in this Agreement:

a. **"Weir Companies"** means The Weir Group, PLC and all other companies affiliated with The Weir Group, individually and collectively, including without limitation the Company.

b. **"Confidential Information."**

    i. Subject to subparagraph ii below, "Confidential Information" means all tangible embodiments of technical information relating to the Company, its business, products, customers, consultants, suppliers or contractors:  (a) which Employee knows or reasonably should know are considered by the Company to be confidential and/or which are marked with the words "Confidential", "Proprietary" or any other designation of confidentiality; and (b) which are not in the public domain.  "Confidential Information" includes without limitation all of the following  types of information to the extent that they fall within description contained in the preceding sentence:

- Technical data and know-how relating to the Company's Products (as defined below).

- Drawings for, and CAD models and images of, the Company's Products.

- Other technical data, specifications and diagrams.

- Manufacturing processes and procedures, and scientific and engineering methods including tooling, patterns, molds, dies, jigs, fixtures and aids to manufacture.

- Formulae, compositions and formulations for alloys, rubbers, synthetic materials, polymers or composites.

- Research and development data.

- Software applications developed the Company, source code, proprietary software and passwords.

- Business plans and reports; unpublished financial accounts, data and reports, bid information and tender documents.

1

- Other matters of a business nature, such as information about costs, profits, markets, sales and margins.

- Customer, consultant, supplier and contractor lists and information relating to the business of the Company's customers, consultants, suppliers and contractors

- Licences and third party agreements of all types.

- Any personal information, data or history located in any personnel records of the Company's employees, consultants or contractors maintained by the Company.

ii. "Confidential Information" does not include the following:

- Any information which is part of the public domain or which hereafter becomes part of the public domain through no fault of Employee.

- Any information which was legitimately in Employee's possession prior to the time of receipt from the Company.

- Any information which comes into Employee's possession and was not acquired by Employee from the Company or from sources under obligation of secrecy to the Company or from sources which require Employee to hold such information in confidence.

c. **"Trade Secret"** means any Confidential Information that (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use, and (ii) is the subject of reasonable efforts by the Weir Companies, including without limitation the Company, to maintain its secrecy.

d. **"Inventions"** means inventions, discoveries, ideas, designs, formulas, works of authorship and compositions of matter, whether or not patentable or copyrightable, including all improvements thereto, conceived or created during Employee's employment with the Company or within 12 months after termination of such employment: (i) which relate to a method, substance, machine, product or improvements thereto within the scope of the Employee's job duties during his or her employment with the Company or within the scope of the role actually performed by the Employee in his or her position of employment; or (ii) in the conception or creation of which Confidential Information played a material part.

2. _Background_. The parties understand and agree as follows:

a. The Company is engaged in the business of manufacturing and distributing products including without limitation one or more of the following: equipment and services

2

for use in the power generation and other industries; equipment and services for use in the minerals processing and metallurgy industries; equipment and services for use in the oil and gas extraction industries (individually and collectively "Products").

b. The Company is one of the Weir Companies. The Company, both directly and through its affiliation with the Weir Companies, owns or has access to Confidential Information.

c. The Weir Companies, including without limitation the Company, have invested substantial time, effort and expense in developing Confidential Information pertaining to the manufacture and sale of the Products. Such Confidential Information includes without limitation the types of information described in paragraph 1(b) above.

d. The Company desires to protect its and the Weir Companies' investment of time, effort and expense in developing the Confidential Information and to preserve competitive advantages which the Confidential Information gives the Weir Companies, including without limitation the Company, in the manufacture and sale of the Products.

e. It is common for the Company to provide Confidential Information to Company employees in confidence to the extent necessary for performance of the employees' duties. Different categories of Company employees typically receive different types and quantities of Confidential Information.

f. Employee's duties are such that Employee is within the category marked below and is subject to all terms and conditions of this Agreement which apply to that category. If no category is marked below, then Employee is a Category A Employee. During the course of Employee's employment with Weir, due to a change of job duties or a change in the nature of Confidential Information to which Employee has access or for other reasons, Employee may be asked as a condition of continued employment to sign a new version of this Agreement designating a different category of employment than the category that applies to Employee in this Agreement.

**Category A** – Includes employees:

- who are not likely to receive Confidential Information frequently; and/or

- whose duties generally do not require them to participate in the creation or modification of Confidential Information or products or designs that embody Confidential Information; and/or

- who may acquire some unique skills and customer contacts but are not likely to acquire a substantial amount of such skills or contacts as a result of their employment by the Company.

Examples of such employees include without limitation shop employees not involved in design or manufacturing activities, junior clerical staff and building

3

maintenance personnel.

**Category B** – Includes employees:

- who are likely to receive or have access to limited Confidential Information periodically; and/or

- whose duties generally require them to use and/or be familiar with such Confidential Information in the course of their work but do not require them to participate in the creation or modification of Confidential Information or products or designs that embody Confidential Information; and/or

- who may acquire substantial unique skills or substantial customer contacts as a result of their employment by the Company.

Examples of such employees include without limitation shop employees involved in design or manufacturing activities, senior clerical staff and some junior management personnel.

**Category C** – Includes employees:

- who are likely to receive or have access to Confidential Information on a regular basis;

- whose duties require them to participate in the creation or modification of Confidential Information or products or designs that embody Confidential Information; and/or

- who are likely to acquire substantial unique skills and/or substantial customer contacts as a result of their employment by the Company.

Examples of such employees include without limitation senior shop employees involved in design or manufacturing activities, engineering and sales personnel, some senior clerical staff, some junior management personnel and senior management personnel.

g. Employee understands and agrees that the descriptions of employees included in each of the Categories set forth above are general and that even if Employee's exact duties and functions differ in some respects from the description for the Category in which he or she is placed, Employee is appropriately placed in that Category for purposes of this Agreement and is bound by all of the terms and conditions of this Agreement which apply to persons in such Category.

h. Employee understands that in case of violation of this Agreement, the Company may have the legal right to pursue claims against Employee in addition to a claim for breach of contract, including without limitation claims for misappropriation of trade secrets under the Uniform Trade Secrets Act (if and as adopted by the state

4

whose law is applicable to this Agreement) and other claims permitted by statute or common law.

3. *Confidential Information.*

a. *Trade Secrets.* Employee will not, except in performing his or her responsibilities for the Company, directly or indirectly use or disclose to others any Trade Secret until such time as the Trade Secret ceases to be a Trade Secret through no fault of the Employee or until such disclosure is authorized by the Company in writing. If the Trade Secret ceases to be a Trade Secret but continues to be Confidential Information, the restrictions on disclosure set forth in subparagraph 3(b) below shall apply.

b. *Non-Trade Secrets.* During the term of Employee's employment with the Company and for a period of two years after the date of termination of such employment, Employee will not, except in performing his or her responsibilities for the Company, directly or indirectly use or disclose to others any Confidential Information which is not a Trade Secret unless such disclosure is authorized by the Company in writing.

c. Employee acknowledges and agrees that the restraints in subparagraphs 3(a) and 3(b) above are no more than are reasonably necessary in all the circumstances to protect the legitimate business interests of the Company.

d. Confidential Information may be disclosed in response to a valid order of a court or other governmental body, provided, that before making any disclosure pursuant to such order, Employee shall give reasonable notice in writing to the Company and shall give the Company a reasonable opportunity to obtain a protective order requiring that the Confidential Information so disclosed be used only for the purpose for which the order was issued.

e. Upon termination of Employee's employment with the Company for any reason, all physical and electronic media incorporating Trade Secrets and other Confidential Information that are in Employee's possession or control at the time of termination shall be returned to the Company. Such media include without limitation the following: samples, parts, prototypes and similar items; writings and electronic storage or retrieval items; notes, records, reports, notebooks, manuals, drawings, memoranda, specifications, blueprints, computer or data processing disks and tapes, schematics, marketing plans, financial plans and studies and reports, and all copies thereof including all electronic or hard copies of such materials. Employee may not retain copies of any such media without the Company's written consent and may not thereafter make any use of the Trade Secrets and other Confidential Information of the Company.

4.   *Solicitation of business and competition.*

a.  If Employee is a "Category A" employee, subparagraphs 4(b) through 4(d) below shall not apply to Employee.  Such subparagraphs shall apply to "Category B" and "Category C" Employees.

b.  For the Specified Period (defined below) following termination of Employee's employment with the Company regardless of whether such termination is with or without cause, Employee shall not solicit business, either personally or on behalf of any other person or entity, from any Employee-Related Customer and shall not assist other persons and entities to solicit business from any Employee-Related Customer of the Company.  In this Agreement, "Employee-Related Customer" means:  (a) any customer or potential customer of the Company with whom Employee consulted or communicated about business or potential business with the Company during the Specified Period preceding termination of his or her employment with the Company, and/or (b) any customer or potential customer of the Company pertaining to whom the Company had Confidential Information which was known to Employee at any time during the two years preceding the termination of Employee's employment with the Company.  "Specified Period" means the following for each employee category described in paragraph 2 above:

| Employee Category | Specified Period |
| --- | --- |
| Category A | Not applicable |
| Category B | 6 months |
| Category C | 12 months |

c.  During the Specified Period (defined hereinabove) following termination of Employee's employment with the Company regardless of whether such termination is with or without cause, Employee shall not

- solicit or encourage any employee of Company or its affiliates to leave the employment of Company of its affiliates, except for employees who have no Confidential Information in their possession and who have acquired no substantial unique skills and/or substantial customer contacts as a result of their employment by the Company;

- hire any such employee who was employed by Company or its affiliates as of the date of Employee's termination of employment with Company or who left the employment of Company or its affiliates coincident with the termination of Employee's employment with Company, except for employees who have no

6

Confidential Information in their possession and who have acquired no substantial unique skills and/or substantial customer contacts as a result of their employment by the Company; or

- directly or indirectly, solicit or encourage to cease to work with Company or its affiliates any consultant or vendor under contract with Company or its affiliates during Employee's employment.

d.  For the Specified Period following termination of Employee's employment with the Company regardless of whether such termination is with or without cause, Employee shall not engage in any employment with or any work for any competitor of the Weir Companies that comprises tasks or activities in which the Employee engaged during the Specified Period preceding termination of Employee's employment with the Company to the extent Employee would be performing the same or similar type of work or services Employee performed for Company during his/her employment.

5.  *Inventions.*

a.  During the time he or she is employed by the Company, Employee will keep the Company informed of any and all Inventions and potential Inventions which are or will be developed, created, conceived or prepared by Employee, either solely or jointly with others, both during and upon completion of the process of development, creation, conception and preparation of the Inventions.

b.  Employee will maintain adequate and current written and electronic records of all Inventions and potential Inventions, including but not limited to being in the form of diaries, notes, sketches, drawings and reports related thereto, which records shall be and shall remain the property of the Company and shall be made available the Company promptly upon request at any time.

c.  The Company shall have exclusive ownership of all Inventions of Employee. Employee shall assign, and does hereby assign, all of its right, title and interest to the Inventions to the Company including all rights to sue for past, present and future infringements thereof.

d.  Employee acknowledges that each copyrightable Invention and each form of any copyrightable Invention is created by Employee as a "work made for hire" under United States copyright laws and, at all stages of development, such Invention shall be and remain the sole and exclusive property of the Company.  The Company, at its sole and absolute discretion, may make any changes in, deletions from, or additions to the Invention.  If for any reason the Invention is determined at any time not to be a work made for hire, Employee hereby irrevocably transfers and assigns to the Company all right, title and interest therein, including all copyrights, as well as all renewals and extensions thereto.  Upon request, Employee shall sign all documents necessary to confirm or perfect the Company's exclusive ownership of all right, title and interest in the Invention.

7

e.  Employee will assist and cooperate with the Company or one or more of the Weir Companies to obtain patents on Inventions for the Company or one or more of the Weir Companies in the United States and in all foreign countries, and, as to copyrightable material, to obtain copyrights thereof.

f.  The obligations of Employee set forth in subparagraph 5(e) shall continue beyond the term of Employee's employment with the Company for such period as shall be reasonably necessary to enable the Company to obtain such patents and/or copyrights. Such obligations may extend to executing, acknowledging and delivering such papers and data, including applications for patents, copyrights, and/or other protection for the aforesaid Inventions, ideas and writings in the United States and in all foreign countries and further do whatever may be required and proper to vest title thereto in the Company and to establish and maintain the validity thereof and to retain all the benefits of each said Inventions in the Company.  The Company shall reasonably compensate Employee for Employee's time expended in assisting the Company in obtaining such patents and/or copyrights after the termination of Employee's employment with the Company.  The Company shall have the right to maintain any and all Inventions as a Trade Secret or as Confidential Information at its discretion and the Employee will cooperate with such actions of the Company.

6.  *Exit interview*.  Employee agrees to participate in an exit interview upon the termination of his or her employment with the Company.

7.  *Governing law*.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the state in which the Company has its principal place of business.

8.  *Litigation forum*.  Any action or other judicial proceeding for enforcement of the Agreement or any of its provisions shall be instituted only in the following courts and in no other court: (i) the state circuit court, district court or other trial court of general jurisdiction for the place at which the Company has its principal place of business, or (ii) the United States District Court for the district within which the Company's principal place of business is located.

9.  *Severability*.  If for any reason any provision of this Agreement is determined to be invalid or otherwise unenforceable by any court of competent jurisdiction, the validity and enforceability of the other provisions of this Agreement shall not be affected thereby, and the provisions found invalid or otherwise unenforceable may be appropriately amended by that court to the extent permitted by law so as to be valid and enforceable.

10.  *Injunctive relief*.  Employee understands and agrees that any continuing breach of this Agreement by the Employee would cause irreparable harm to the Weir Companies, including without limitation the Company.  Accordingly, Employee agrees that if he or she breaches this Agreement the Company will have, in addition to any other right or remedy, the right to obtain an injunction from a court of competent jurisdiction restraining such breach and to specific performance of the Agreement.  No bond or other security shall be required in order to

obtain such injunctive relief, and Employee agrees to the issuance of such injunction and to the ordering of specific performance if requested by the Weir Companies.

11.     *Attorneys fees.*  If Employee breaches or defaults in the performance of any of his or her obligations under the Agreement, then in addition to all other rights and remedies which the Company may have against Employee, Employee will be liable to the Company for and shall pay the Company its court costs and reasonable attorneys fees incurred in anticipation of or as a result of such breach or default.

12.     *Entire agreement.*  This Agreement contains the entire understanding and agreement of the parties as to the subject matter hereof and supersedes all prior agreements of the parties as to the subject matter hereof whether oral or written.

13.     *Modification of Agreement.*  No provision of this Agreement may be modified or waived except by a written instrument executed by each of the parties to the Agreement.

14.     *At-will employment.*  This Agreement does not alter the at-will employment relationship between Employee and the Company.  Such employment relationship is terminable at the will of either party at any time, with or without cause or notice.

15.     *Assignability.*  Company may assign the benefit of this Agreement to any successor in interest that results from a merger, reorganization or acquisition.  Otherwise, no party to this Agreement may assign any right or delegate any duty required by this Agreement without the written consent of the other party affected by such assignment or delegation.

16.     *Counterparts.*  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same agreement.

17.     *Headings and Section References.*  All headings used in this Agreement are intended for convenience and reference only and shall not in any manner amplify, limit, modify, amend, or otherwise be used in the construction or interpretation of any provision of this Agreement.  All section references are to sections of this Agreement.

18.     *Other agreements of Employee.*  Employee represents and warrants that neither the execution of this Agreement by Employee nor the performance by Employee of his duties to the Company constitutes a breach of any covenant not to compete, confidentiality agreement or any other contract to which Employee may be subject.

9

Dated as of the latest date set forth below.

I hereby agree that my employee category described in Paragraph 2 and the related restraint period specified in Paragraph 4 above is:

Category:  A  or  B  or (C) (circle one only)

**EMPLOYER:**

WEIR  MINERALS  LINATEX
Name of company

By: _____
Signature

DAVID  TIMM
Printed name of official:

ENG.  MANG.
Title

Date:  10-31-11

**EMPLOYEE:**

_____
Signature

Kayleen Collard Lee
Printed name

Date:  7 Sept 2011

---

*COMPLETION CHECKLIST:*

*Have you printed your full legal name and your signature on this page*

*Have you dated this agreement?*

*Has the Category of Employee been circled (just above the signature block)*

*Has the bottom corner of each page been initialed?*

*Have all pages been sent back together to Weir?*