# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KAYLEEN COLLARD,<br><br>                Plaintiff,<br><br>v.<br><br>WEIR SLURRY GROUP, INC., d/b/a WEIR MINERALS LINATEX,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [16] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00181-DN<br><br>District Judge David Nuffer |

      Kayleen Collard[1] has sued her former employer, Weir Slurry Group, Inc., d/b/a Weir

Minerals Linatex ("Weir"),[2] alleging claims of disability discrimination in violation of the

Americans with Disabilities Act ("ADA") and gender discrimination under Title VII of the Civil

Rights Act of 1964 ("Title VII").[3] Ms. Collard worked as a chemist for Weir, a rubber product

design and manufacturing company, for about two and a half years.[4] She claims in this action

that Weir discriminated against her based on her disabilities and also subjected her to hostile

environment sexual harassment.[5] Weir moved for summary judgment to dismiss Collard's claims

---

[1] Plaintiff is also known as Kayleen Lee and Kayleen Collard Lee according to the record. For purposes of this Motion, she is referred to as Collard, the surname under which she filed this action.

[2] First Amended Complaint (the "Complaint"), filed as part of Exhibit 1 to Defendant's Notice of Removal at 4–14, docket no. 2-1, filed March 4, 2016.

[3] Three other causes of action—breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing—were included in the Complaint, but those claims were dismissed on Weir's Motion for Partial Judgment on the Pleadings, which Collard did not oppose. Order Granting Motion for Partial Judgment on the Pleadings, docket no. 14, filed May 5, 2016.

[4] Complaint ¶¶ 8–9.

[5] Complaint ¶¶ 32–59.

(the "Motion").[6] Collard opposed the Motion ("Opposition"),[7] and Weir responded to the Opposition ("Reply").[8]

Weir makes two general arguments in favor of summary judgment. First, Weir contends that Collard's entire Complaint must be dismissed because Collard released Weir from the claims in a settlement agreement (the "Settlement Agreement"). The Settlement Agreement, which included a mutual release (the "Release"), resolved a separate state court action by Weir against Collard for trade secret misappropriation and related claims (the "Trade Secret Action"). Second, Weir argues in the alternative that Collard's ADA claim and any disparate treatment portion of her gender discrimination claim should be dismissed for lack of merit on the undisputed facts. Weir's Motion does not attack Collard's claims for hostile environment sexual harassment.

The Motion is DENIED IN PART and GRANTED IN PART. The Settlement Agreement does not apply to Collard's claims in this action, and therefore the Motion based on release (which Weir describes as "waiver") is denied. Partial summary judgment is proper because the undisputed facts show that Collard was not terminated for ADA discrimination as a matter of law. The partial summary judgment, however, does not resolve Collard's claims for hostile environment sexual harassment.

---

[6] Defendant's Motion for Summary Judgment, docket no. 16, filed February 3, 2017.

[7] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (the "Opposition"), Exhibit A to Errata, docket no. 23-1, filed March 15, 2017. The working draft of the Opposition, docket no. 21, filed on March 13, 2017, is disregarded. Counsel is cautioned against neglecting motion briefing deadlines imposed by rule or stipulation.

[8] Defendant's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment (the "Reply"), docket no. 24, filed March 27, 2017.

**Table of Contents**

Summary Judgment Standard ................................................................................................ 3
Undisputed Material Facts ................................................................................................... 4
    The Employment Relationship ..................................................................................... 4
    Collard's Disability and Accommodation Requests ..................................................... 5
    Weir's Discipline of Collard Before Termination ........................................................ 7
    Termination for Email Forwarding .............................................................................. 8
    State Court Trade Secret Suit and Settlement Agreement ............................................ 9
Discussion ......................................................................................................................... 11
    Collard Did Not Release Her Discrimination Claims  When Settling the Separate Trade
        Secret Action.......................................................................................................... 12
    Collard's ADA Discrimination Claim Fails as a Matter of Law. ................................ 15
        Collard Has Established a Prima Facie Case of Discrimination.......................... 16
        Weir Has Shown Non-discriminatory Reasons for Its Adverse Employment
            Actions. .......................................................................................................... 18
        Collard Has Not Created a Genuine Issue of Material Fact as to Pretext............ 20
    Collard's Sexual Harassment Claim Is Not Dismissed on Summary Judgment. ............ 22
Order ................................................................................................................................. 25

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[10] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the

---

[9] Fed. R. Civ. P. 56(a).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

[11] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

nonmovant."[12] "As to materiality, the substantive law will identify which facts are material."[13] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[14] "Factual disputes that are irrelevant or unnecessary will not be counted."[15]

UNDISPUTED MATERIAL FACTS[16]

**The Employment Relationship**

1.      Weir develops, designs, and manufactures rubber-related products and provides related services.[17]

2.      On August 25, 2011, Weir offered Collard a job as a chemist in its Salt Lake City facility.[18]

3.      Collard started her employment with Weir on October 3, 2011.[19]

4.      As a chemist, Collard reported to the Engineering Manager/Director.[20]

5.      When she started, Collard's supervisor was David Timm. In the Spring of 2013, Tham Siew Meng became her supervisor.[21]

---

[12] *Id.*

[13] *Anderson*, 477 U.S. at 248.

[14] *Id.*

[15] *Id.*

[16] The following statement of material facts is based on the facts set forth in the Motion and Opposition. Where a statement of fact is undisputed, it is so indicated and appears verbatim. The remaining facts have been resolved by comparing the parties' fact statements to identify undisputed portions of their contentions and by referring to the exhibits in the record for facts that are not genuinely in dispute. Only those facts which are not genuinely in dispute may support a summary judgment decision. *Adler*, 144 F.3d at 670.

[17] Motion at 2.

[18] *Id.*

[19] *Id.*

[20] *Id.* Exhibit L (Job Description), docket no. 16-12.

[21] *Id.* at 2.

**Collard's Disability and Accommodation Requests**

6.      Prior to commencing employment with Weir, Collard informed both Timm and Human Resources Manager Julene Persinger that she required accommodation for a disability.[22]

7.      After conversations with Collard, Weir granted her permission to use a parking space close to the building until Collard got a parking pass for the designated accessible parking spot at Weir's facility.[23]

8.      Weir agreed to limit Collard's work-related travel.[24]

9.      Weir made concessions to Collard by excusing her from climbing stairs and wearing steel-toed shoes as personal protective equipment.[25]

10.     Collard was permitted to use a wheelchair at work.[26]

11.     Collard made a formal accommodation request in the spring of 2012, which set forth several proposed accommodations.[27]

12.     In that accommodation request, Collard identified her conditions as "[d]isabling nausea with cyclic vomiting syndrome, recurrent hiatal hernia, open thoracic surgery recovery—nissen fundopolication with infection, generalized anxiety disorder and dysautonomia."[28]

13.     Collard claimed that these conditions resulted in her experiencing "some balance/coordination difficulties, weakness, violent nausea, pain, and fatigue." She also asserted that these conditions limited her mobility and caused her to limp, walk slowly, or use a

---

[22] Motion at 8, *Failure to Accommodate under the ADA* ¶ 1; Opposition at 10 (undisputed).

[23] Motion at 8, *Failure to Accommodate under the ADA* ¶ 2; Opposition at 10–11.

[24] Motion at 8, *Failure to Accommodate under the ADA* ¶¶ 3–4; Opposition at 11.

[25] Motion, Exhibit D at 184–86, docket no. 16-4.

[26] Motion at 9, *Failure to Accommodate under the ADA* ¶ 15; Opposition at 15.

[27] Motion at 10, *Failure to Accommodate under the ADA* ¶ 18, Exhibit K (Request for Disability Accommodation Form), docket no. 16-11; Opposition at 16.

[28] Motion at 10, *Failure to Accommodate under the ADA* ¶ 19; Opposition at 16 (undisputed).

wheelchair. Finally, Collard explained that her symptoms were cyclical, and thus "the severity of these symptoms can vary from day to day."[29]

14.    Collard requested the following accommodations:

    a.   Help from one other person to lift and open press molds;

    b.   Help from one other person to cut rubber;

    c.   Extra time for moving about the facility;

    d.   Limit on travel to U.S. flights of no more than four hours;

    e.   Parking on a flat area or help from one person to enter the facility;

    f.   Limit work hours to 40 per week; and

    g.   Flexible onsite attendance or remote access when severely sick.[30]

15.    Weir's personnel reviewed Collard's request and determined that some accommodations, like the limit on travel, were already in place, and others, like flexible onsite attendance, were unreasonable.[31]

16.    In the fall of 2013, Human Resources Manager Persinger asked Collard to resubmit an updated accommodation request."[32]

17.    The proposed accommodations presented by Collard in 2013 were substantially the same as her spring 2012 requests.[33]

---

[29] Motion at 10, *Failure to Accommodate under the ADA* ¶ 20; Opposition at 16 (undisputed).

[30] Motion, Exhibit K, docket no. 16-11.

[31] Motion at 10–11, *Failure to Accommodate under the ADA* ¶¶ 21–23; Opposition at 17.

[32] Motion at 11, *Failure to Accommodate under the ADA* ¶ 24; Opposition at 17 (undisputed).

[33] Motion at 11, *Failure to Accommodate under the ADA* ¶ 26; Opposition at 18 (undisputed).

18.     On that basis, Weir determined that no new accommodations for Collard's disabilities were necessary.[34]

### Weir's Discipline of Collard Before Termination

19.     Collard received a written admonition for using her wheelchair to store and transport rubber, which Weir deemed "not an appropriate or safe use of [her] personal wheelchair."[35]

20.     Weir issued a written admonition to Collard on December 30, 2013, warning her "regarding dishonesty and misuse of company email."[36]

21.     Weir made the decision to issue the written admonition based on the conclusion[37] that Collard forwarded an email with some past-due work product attached on December 2, 2013 after manipulating the email to appear as if it were originally sent earlier than it was.[38]

22.     In February 2014, Collard was placed on paid administrative leave for insubordination.[39]

23.     Weir made the decision to put Collard on administrative leave after determining[40] that Collard was insubordinate to her supervisor, Tham Meng, in an incident where Meng

---

[34] Motion at 11, *Failure to Accommodate under the ADA* ¶ 27, Exhibit K, Julene Persinger Deposition, at 61–66, docket no. 18-11.

[35] Motion, Exhibit R (Verbal Admonition dated December 19, 2013), docket no. 18-18.

[36] Motion, Exhibit N (Written Admonition dated December 30, 2013), docket no. 18-14.

[37] Collard denies that she acted dishonestly or falsified email. Opposition at 21. However, Weir's intent—rather than Collard's true actions—is the material fact for purposes of this claim. *Anderson*, 477 U.S. at 248.

[38] Motion at 12–14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 1–7, Exhibit N (Written Admonition), docket no. 18-14.

[39] Motion at 14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 8–9; Opposition at 33–34.

[40] Collard denies that she was insubordinate to Meng. Opposition at 23. However, Weir's intent—rather than Collard's actual actions—is the material fact for purposes of this claim. *Anderson*, 477 U.S. at 248.

requested information that Collard could not provide within the time he wanted, and the two of them argued.[41]

### Termination for Email Forwarding

24.     On Monday, March 10, 2016, Weir sent Collard a letter officially terminating her employment.[42]

25.     Weir made the decision to terminate Collard after determining[43] that Collard violated the company Confidentiality Agreement and employee policies, as well as concerns that she may have misappropriated confidential information and trade secrets.[44]

26.     Prior to her termination, Collard conceded that she had set up preferences on her company email to forward emails to her personal email account, although she denied being aware that her conduct violated company policy.[45]

27.     Persinger advised Collard of the findings of the internal investigation [into Collard's email use] and asked her to make available to a third party expert all of her personal technology devices (computer, smart phones, hard drives, USB flash drives, etc.) and email accounts, so that any intellectual property belonging to Weir could be retrieved and returned to Weir.[46]

---

[41] Motion at 14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 8–9; Opposition at 33–34.

[42] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 27; Opposition at 28 (undisputed).

[43] Collard denies that she violated any company policies or misappropriated trade secrets. However, Weir's intent— rather than Collard's actual actions—is the relevant fact for purposes of this claim. *Anderson*, 477 U.S. at 248.

[44] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 28; Opposition at 28.

[45] Motion at 16, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 20; Opposition at 26 (undisputed).

[46] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 22; Opposition at 27 (undisputed).

28.     Collard was advised that if she refused to comply with this request Weir planned to file a lawsuit against her.[47]

**State Court Trade Secret Suit and Settlement Agreement**

29.     On March 7, 2014, Weir filed a Verified Complaint in Utah state court ("Trade Secret Complaint") in which it sought a temporary restraining order and injunctive relief against Collard.[48]

30.     The Trade Secret Complaint asserted causes of action against Collard for Breach of Contract, Misappropriation of Trade Secrets, Breach of Duty of Loyalty, and Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.[49]

31.     Following the termination of Collard's employment, and after litigating the State Court Lawsuit for over a year, the parties entered into a Settlement Agreement and Mutual Release of Claims ("Settlement Agreement")[50] "to avoid the expense and uncertainty of further litigation."[51]

32.     Collard signed the Settlement Agreement on June 24, 2015.[52]

33.     At the time that she signed the Settlement Agreement, she had read the Settlement Agreement, understood it, and agreed to it.[53]

---

[47] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 23; Opposition at 27 (undisputed).

[48] Motion at 3; *Weir Slurry Group v. Kayleen Lee*, Verified Complaint, Motion, Exhibit B, docket no. 16-2.

[49] Trade Secret Complaint.

[50] Settlement Agreement and Release of Claims, Motion, Exhibit A, docket no. 16-1.

[51] Motion at 6, *Waiver* ¶ 1; Opposition at 7 (disputing in part but asserting no basis for a dispute).

[52] Motion at 7, *Waiver* ¶ 13; Opposition at 9 (undisputed).

[53] Motion at 7, *Waiver* ¶ 14; Opposition at 9–10 (undisputed).

34.     The settlement negotiations involved back and forth discussions and revisions between Collard's attorneys and Weir's attorneys.[54]

35.     Collard had the opportunity to confer with her counsel concerning the negotiation of the Settlement Agreement.[55]

36.     As part of the Settlement Agreement, Collard entered into a mutual release of claims that provided, with respect to her claims against Weir, as follows:

> [Collard], and her successors and assigns, forever releases Weir and its shareholders, members, principals, officers, managers, agents, attorneys, servants, employees, administrators, executors, insurers, successors, or assigns, from any and all claims, demands, or causes of action, at law or in equity, whether known or unknown, which [Collard] has asserted or could have asserted in the Lawsuit, including but not limited to claims for costs and attorney fees. This mutual release does not apply to the Discrimination Charge and UOSH Complaint, which are claims that [Collard] may continue to pursue.[56]

37.     The mutual release of claims also provided for Weir's release of claims in favor of Collard.[57]

38.     Weir also agreed, as part of the Settlement Agreement, to dismiss all remaining claims in the State Court Lawsuit with prejudice by filing an Order of Dismissal.[58]

39.     Through counsel, Collard negotiated two exceptions to the general release; namely, that Collard's general release did not apply to "the Discrimination Charge and the UOSH Complaint, which are claims that [Collard] may continue to pursue."[59]

---

[54] Motion at 7, *Waiver* ¶ 7; Opposition at 8 (undisputed).

[55] Motion at 7, *Waiver* ¶ 9; Opposition at 8 (undisputed).

[56] Motion at 6, *Waiver* ¶ 2 (quoting Settlement Agreement ¶ 5); Opposition at 7 (undisputed).

[57] Motion at 6, *Waiver* ¶ 3; Opposition at 8 (undisputed).

[58] Motion at 6, *Waiver* ¶ 4; Opposition at 8 (undisputed).

[59] Motion at 7, *Waiver* ¶ 11 (citing Settlement Agreement ¶ 5); Opposition at 9 (undisputed).

40.     "Discrimination Charge" is a defined term based on the following provision of the Settlement Agreement: "[Collard] has also filed a Charge of Discrimination against Weir, which is currently pending before the Equal Employment Opportunity Commission and Utah Anti-discrimination and Labor Division (the 'Discrimination Charge')."[60]

41.     "UOSH Complaint" is also defined in the Settlement Agreement: "[Collard] has also filed a complaint against Weir with the Utah Occupational Safety and Health Division (the 'UOSH Complaint')."[61]

## DISCUSSION

Federal law provides certain protections against discrimination in the workplace. Two such protections are at issue in this case. First, the ADA outlaws discrimination against persons with disabilities.[62] Second, Title VII outlaws discrimination on the basis of gender, which has been interpreted to include sexual harassment.[63]

Collard claims that, while working for Weir as a chemist, she faced discrimination for her disabilities, as well as sexual harassment.[64] Weir argues that Collard released her discrimination claims under a Settlement Agreement in a separate lawsuit, which included a mutual Release.[65] This argument is rejected because the terms of the Release do not apply to Collard's discrimination claims. In the alternative, Weir seeks partial summary judgment on "Collard's entire ADA claim and the disparate treatment portion [sic] of her Title VII claim."[66] The

---

[60] Settlement Agreement, Recital D.

[61] *Id*.

[62] 42 U.S.C. § 12112.

[63] 42 U.S.C. § 2000e-2; *Meritor Sav. Bank, FSH v. Vinson*, 477 U.S. 57, 65–67 (1986).

[64] Complaint ¶¶ 35–62.

[65] Motion at 19–25.

[66] Motion at 1.

undisputed material facts show that Collard's termination did not violate the ADA. Collard's sexual harassment claim is not based on disparate treatment but is a hostile environment claim, so Weir's summary judgment argument on that claim is rejected. Because Collard's hostile environment claim is not challenged by the Motion, her sexual harassment claim survives summary judgment.

**Collard Did Not Release Her Discrimination Claims
When Settling the Separate Trade Secret Action.**

Weir and Collard have had other disputes that have been resolved outside of this action. Weir accused Collard of trade secret misappropriation because Collard allegedly set her work email account to forward messages with confidential and proprietary material to her personal email account.[67] Weir sued Collard in Utah state court, asserting claims for Breach of Contract, Misappropriation of Trade Secrets, Breach of Duty of Loyalty, and Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.[68] The Trade Secret Action was resolved by a Settlement Agreement between the parties.[69] Under the Settlement Agreement, Collard agreed to return all confidential and proprietary information in her possession to Weir and stipulated to a permanent injunction restraining her from using or disclosing any of Weir's protected information.[70]

Weir argues that the Release in the Settlement Agreement applies broadly enough to bar Collard's discrimination claims in this federal action. The Release provides: "[Collard], and her successors and assigns, forever releases Weir and [related entities], from any and all claims, demands, or causes of action, at law or in equity, whether known or unknown, which [Collard] has asserted or could have asserted in the Lawsuit, including but not limited to claims for costs

---

[67] Trade Secret Complaint ¶¶ 16–17.

[68] Trade Secret Complaint ¶¶ 23–54.

[69] Settlement Agreement, docket no. 16-1.

[70] *Id.* ¶ 3.

and attorney fees."[71] The Release uses broad terms such as "any and all claims" and "known or unknown," but limits the Release to claims which Collard "has asserted or could have asserted in the Lawsuit."[72] "Lawsuit" is defined as the Trade Secret Action in state court.[73]

The Settlement Agreement addresses Collard's claims against Weir for discrimination by excepting those claims from the Release: "This mutual release does not apply to the Discrimination Charge and UOSH Complaint, which are claims that [Collard] may continue to pursue."[74] The Discrimination Charge and the UOSH Complaint are both defined terms. "Discrimination Charge" is defined in the following recital in the Settlement Agreement: "[Collard] has also filed a Charge of Discrimination against Weir, which is currently pending before the Equal Employment Opportunity Commission and Utah Anti-discrimination and Labor Division (the 'Discrimination Charge')."[75] "UOSH Complaint" is defined in the recitals as well: "[Collard] has also filed a complaint against Weir with the Utah Occupational Safety and Health Division (the 'UOSH Complaint')."[76]

Collard argues that she did not intend to release her discrimination claims or limit them to state administrative proceedings with this Release.[77] Weir argues that the exception to the Release applies only to the specifically named administrative actions, and that Collard's discrimination claims are otherwise subject to the Release.[78]

---

[71] *Id.* ¶ 5.

[72] *Id.*

[73] *Id.* Recital A.

[74] *Id.* ¶ 5.

[75] *Id.*, Recital D.

[76] *Id*.

[77] Opposition at 47–50.

[78] Motion at 19–22.

"The interpretation of an unambiguous contract is a question of law to be determined by the court, and may be decided on summary judgment."[79] The unambiguous terms of the Settlement Agreement provide that Collard's discrimination claims are not waived in the Release.

The scope of the Release is narrower than the release analyzed in the Seventh Circuit decision cited by Weir,[80] *Riley v. American Family Mutual Insurance Co.*[81] The release in *Riley* was for claims "relating in any way to [the plaintiff's] employment," and included a limited exception "to pursue and appeal her administrative claim" that was "now pending."[82] The Settlement Agreement between Collard and Weir was not drafted to apply to the entire scope of Collard's employment with Weir. The primary clause of the Release applies to claims that were asserted or could have been asserted in the Trade Secret Action.[83] Nothing in the record indicates that Collard's discrimination claims were or could have been[84] asserted in the Trade Secret Action.

Even assuming that Collard's discrimination claims could have been asserted in the Trade Secret Action by permissive counterclaim, the Release specifically excepts Collard's discrimination charge and complaint against Weir.[85] Even though the exception to the Release identifies the forums in which Collard was then pursuing the discrimination claims, it excepts the two discrimination *claims* from the Release and not merely the state agency *actions*. Indeed,

---

[79] *Pub. Serv. Co. of Okla. v. Burlington N. R. Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995) (internal citations omitted).

[80] Motion at 20.

[81] 881 F.2d 368, 373 (7th Cir. 1989).

[82] *Id.*

[83] Settlement Agreement ¶ 5.

[84] Because the claims were pending in administrative proceedings, they were not ripe for litigation.

[85] *Id.*

claims and complaints filed with these state agencies ripen into lawsuits, as has occurred here.[86] The Release does not bar Collard's claims.

### Collard's ADA Discrimination Claim Fails as a Matter of Law.

Weir seeks partial summary judgment on Collard's discrimination claims in the alternative to a complete dismissal under the Release.[87] The undisputed facts support summary judgment on the ADA discrimination claim.

As Collard acknowledges, her ADA discrimination claim is based on circumstantial evidence,[88] which is not unusual given that "[t]here will seldom be eyewitness testimony as to the employer's mental processes."[89] Under the burden-shifting framework for analyzing discrimination claims based upon circumstantial evidence set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*,[90] the Tenth Circuit engages in a three-step analysis: (1) first, the plaintiff must establish a prima facie case of discrimination or retaliation; (2) if the plaintiff satisfies this initial burden, the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the burden then shifts back to the plaintiff who must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.[91]

---

[86] Complaint ¶ 5 (asserting that Collard received a right to sue letter on or about October 5, 2015 for the Discrimination Charge and the UOSH Complaint).

[87] Motion at 1.

[88] Opposition at 50.

[89] *U.S. Post Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

[90] 411 U.S. 792 (1973).

[91] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017).

***Collard Has Established a Prima Facie Case of Discrimination.***

Collard has asserted a single claim under the ADA for discrimination but has applied several labels to her multi-faceted claim. Collard alleges *discrimination* for Weir's *failure to accommodate* known disabilities.[92] She claims *retaliation* by Weir for terminating her in response to a protected activity.[93] And she alleges *discrimination* by Weir for "making *disability related inquiries* of [her] as to whether [she] is an individual with a disability [which is prohibited] unless such examination or inquiry is shown to be job-related and consistent with business necessity."[94]

These separate facets of Collard's ADA discrimination claim do not change the legal analysis. Failure to accommodate known disabilities and making disability-related inquiries are both forms of discrimination.[95] However, Collard has not shown that she suffered any distinct harm from the different forms of discrimination on which to base a separate claim. Collard shows no factual connection between failure to accommodate and any adverse employment actions.[96] She contends that she was admonished for using her wheelchair to transport rubber, which her supervisors deemed unsafe, but did not explain how that admonition arose out of a failure to accommodate.[97] Nor has Collard provided facts or developed argument that she suffered medical inquiry discrimination.[98]

---

[92] Complaint ¶¶ 41–42.

[93] *Id.* ¶ 44.

[94] *Id.* ¶ 43 (citing 42 U.S.C. § 12112(b)(6) and § 12112(d)(4)(A)) (emphasis added).

[95] 42 U.S.C. §§ 12112(b)(5)(A), 12112(d).

[96] Opposition at 30–31.

[97] *Id.*

[98] Complaint ¶ 46 (not addressed in Opposition).

Similarly, Collard's retaliation claim need not be analyzed separately from her discrimination claim. ADA retaliation differs from ADA discrimination. Retaliation is shown by adverse actions against an employee for her efforts to enforce ADA rights while discrimination is shown by adverse actions for the disability itself.[99] The Tenth Circuit treats retaliation claims and discrimination claims the same if the adverse employment action is the same.[100] The distinction between discrimination and retaliation makes no difference here, where Collard's disability is not in dispute,[101] and where all of the adverse employment actions alleged—a written admonition, paid administrative leave, and termination—relate to the discrimination claim.[102] Accordingly, Collard's retaliation and discrimination claims are analyzed as one.

To establish a prima facie case for discrimination under the ADA, a plaintiff must show that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."[103] Collard has established a prima facie case for discrimination under these elements. First, she is a disabled person as defined by the ADA. Her medical conditions cause balance and coordination difficulties, weakness, violent nausea, pain, and fatigue,[104] which interfere with major life activities.[105] Collard was qualified to perform the essential functions of the chemist position she

---

[99] *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016).

[100] *Id.* at 1186–87.

[101] Motion at 8, *Failure to Accommodate under the ADA* ¶ 1; Opposition at 10 (undisputed).

[102] Opposition at 50–56.

[103] *Dewitt*, 845 F.3d at 1308 (quoting *E.E.O.C. v. C.R. Eng., Inc.*, 644 3d 1028, 1037–38 (10th Cir. 2011)).

[104] Motion at 10, *Failure to Accommodate under the ADA* ¶ 20; Opposition at 16 (undisputed).

[105] 42 U.S.C. § 12102(1) (defining disability under the ADA).

held with Weir. She was hired for her qualifications,[106] which include a bachelor's degree in chemical engineering and a minor in chemistry from the University of Utah.[107] Third, Collard has shown a prima facie case for discrimination. She received a written warning, was put on administrative leave, and was terminated, which she contends were because of her disability.[108]

Because Collard has shown a prima facie case of ADA discrimination, further inquiry is required into whether Weir had non-discriminatory reasons for its adverse employment actions.[109]

***Weir Has Shown Non-discriminatory Reasons for Its Adverse Employment Actions.***

Even though Collard has satisfied her initial burden to prove a prima facie case of discrimination, Weir has shown non-discriminatory reasons for each of the adverse employment actions it took against Collard. Collard alleges three adverse employment actions that Weir took against her: written admonition, paid administrative leave, and termination.

The written admonition was not issued because of Collard's disability. Weir concluded that Collard manipulated an email to her supervisor to appear as if it were originally sent earlier than it was.[110] The written admonition Weir issued to Collard on December 30, 2013, concerned this incident. It warned her "regarding dishonesty and misuse of company email," which Collard has not shown relates to her disability.[111]

---

[106] Motion at 2.

[107] Motion at 7, *Waiver* ¶ 16; Opposition at 10 (undisputed).

[108] Complaint ¶¶ 35–49.

[109] *Dewitt*, 845 F.3d at 1308 (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[110] Motion at 12–14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 1–7, Exhibit N (Written Admonition), docket no. 18-14.

[111] Motion at 12–14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 1–7, Exhibit N (Written Admonition), docket no. 18-14.

The paid administrative leave was not imposed because of Collard's disability. Collard was placed on paid administrative in February 2014, following an incident where Collard's supervisor, Meng, requested information that Collard could not provide within the time he wanted, and the two of them argued.[112] Weir decided to put Collard on administrative leave after determining that Collard was insubordinate to her supervisor in that incident.[113] Collard has not shown that the leave relates to her disability.

Collard's termination likewise was not for her disability. Weir terminated Collard on March 10, 2016.[114] Weir terminated Collard after determining that Collard violated the company Confidentiality Agreement and employee policies, as well as concerns that she may have misappropriated confidential information and trade secrets.[115] Prior to her termination, Collard conceded that she had set up preferences on her company email to forward emails to her personal email account, although she denied being aware that her conduct violated company policy.[116] Weir conducted an internal investigation into Collard's email use and then advised Collard of the findings.[117] Weir threatened suit against Collard if she did not make her personal technology devices available to a third party expert so that any intellectual property belonging to Weir could be retrieved and returned to Weir.[118] This conflict resulted in the Trade Secret Action.[119] Collard

---

[112] Motion at 14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 8–9; Opposition at 33–34.

[113] *Id.*

[114] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 27; Opposition at 28 (undisputed).

[115] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 28; Opposition at 28.

[116] Motion at 16, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 20; Opposition at 26 (undisputed).

[117] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 22; Opposition at 27 (undisputed).

[118] Motion at 17, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 23; Opposition at 27 (undisputed).

[119] Trade Secret Complaint, [docket no. 16-2](docket no. 16-2).

has not shown that the allegations of email misuse and potential trade secret violations relate to her disability.

In each incidence of adverse action against Collard, the record shows that Weir was motivated by a non-discriminatory reason for the action. Therefore, further inquiry is required into whether the non-discriminatory reasons offered by Weir were pretext for discrimination.

***Collard Has Not Created a Genuine Issue of Material Fact as to Pretext.***

Collard argues that the non-discriminatory reasons for Weir's adverse employment actions are pretextual.[120] "The pretext prong of that framework permits a plaintiff employee to raise a triable inference that the stated reasons for the adverse action underlying an employer's ostensibly honest belief are a pretext for discrimination."[121] Whether a reason for adverse employment action is a pretext is a different issue from whether the adverse employment action was correct. As the Tenth Circuit has explained, the courts' "role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs."[122] "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility."[123] In other words, it is not necessary to validate the factual basis of Weir's actions and decisions to conclude that those actions and decisions were not a pretext for discrimination.

---

[120] Opposition at 53–56.

[121] *Dewitt*, 845 F.3d at 1311.

[122] *Id.* at 1307 (internal quotations and citations omitted).

[123] *Id.* (citing *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 948 (10th Cir. 2011)).

The tools available to an employee to expose her employer's stated reason as a pretext include showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's stated reason for terminating the employee.[124] An employee may also show disparate treatment, "demonstrating that the employer treated employees similarly situated to the plaintiff employee differently," to discredit a pretext.[125]

Collard has not shown that Weir's stated reasons for its adverse employment actions were pretext. Collard's explanation for terminating Collard is not implausible, contradictory, or inconsistent. Even though Collard disputes that she violated company policy, she does not dispute that she set her work email to forward to a personal account.[126] Collard and Weir litigated for almost a year over whether Collard's actions constituted trade secret misappropriation or related claims.[127] Similarly, the record supports Weir's explanation for the written admonition. Weir's claim that Collard manipulated an email to her supervisor to appear as if it were originally sent earlier is not implausible.[128] Nor is Weir's explanation that Collard was put on administrative leave for insubordination in the course of an argument with her supervisor.[129] Collard shows no weakness in these explanations and advances no plausible theory of her own as to how her termination, administrative leave, or written admonitions were causally linked, in whole or in part, to her disability.

---

[124] *Id.* at 1311.

[125] *Id.*

[126] Motion at 16, *Disparate Treatment Discrimination under the ADA and Title VII* ¶ 20; Opposition at 26 (undisputed).

[127] Motion at 6, *Waiver* ¶ 1; Opposition at 7 (disputing in part but asserting no basis for a dispute).

[128] Motion at 12–14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 1–7, Exhibit N (Written Admonition), docket no. 18-14.

[129] Motion at 14, *Disparate Treatment Discrimination under the ADA and Title VII* ¶¶ 8–9; Opposition at 33–34.

Collard attempts to demonstrate that Weir treated a similarly situated employee differently from Collard as proof of pretext. She contends that James Fowles committed similar acts of misconduct but was not disciplined.[130] However, the record shows that Fowles' experience at Weir is distinguishable from Collard's.[131] Unlike Collard, Fowles used personal email accounts so that he could communicate directly with an internal group of employees as required.[132] Unlike Collard, Fowles had limited permission to send data from his personal email account.[133] And unlike Collard, Fowles had a practice of deleting the information once he was finished.[134] The allegations against Collard are too dissimilar from Fowles' account to demonstrate that Weir's treatment of Collard was a pretext for discrimination.

Each prong of the *McDonnell-Douglas* analysis supports dismissing Collard's claim for ADA discrimination. Therefore, partial summary judgment in favor of Weir on the ADA discrimination claim is granted.

**Collard's Sexual Harassment Claim Is Not Dismissed on Summary Judgment.**

Federal law protects against sexual harassment in its multiple forms. Collard has asserted a claim for hostile environment sexual harassment under Title VII.[135] Working conditions can amount to harassment—even without a *quid pro quo* demand for sexual favors by a superior employee—if the conditions are severely or pervasively imbued with unwelcome sexual conduct.[136] To prove a claim for hostile environment harassment, a plaintiff must show: (1) she

---

[130] Opposition at 35–36.

[131] Reply at 8–9; Opposition, Exhibit 5 (James Fowles Deposition Transcript, October 18, 2016 ("Fowles Dep.")), docket no. 22-5.

[132] Fowles Dep. at 40:10–41:23.

[133] *Id.*

[134] *Id.*

[135] Complaint ¶¶ 50–62.

[136] *Meritor*, 477 U.S. at 65–67.

is a member of a protected class; (2) the conduct in question was unwelcome; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) there is a basis for imputing liability to the employer.[137]

Collard sets forth in the Opposition details of her alleged sexual harassment that are in the record.[138] She alleges that multiple coworkers called her derogatory and sexually demeaning names, extended unwanted sexual advances, and made obscene comments to her.[139] Collard alleges, for example, that a coworker told Collard that he wanted to perform abusive sexual acts on her.[140] He then walked around her while licking his lips and smiling at her.[141] Collard repeatedly rejected the sexual conduct by her co-workers.[142] She also reported the incidents as unwanted sexual conduct to her supervisor, Meng, and to the human resources manager, Persinger.[143] Collard alleges that Meng and Persinger refused to report or address the sexual conduct.[144] These statements were not disputed in Weir's Reply.[145] Collard's allegations create at least a dispute of fact on the elements of Collard's sexual harassment claim, including whether the harassment was sufficiently severe or pervasive to be actionable and whether a basis exists for imposing liability on Weir.[146]

---

[137] *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).

[138] Opposition at 41–44.

[139] *Id.*

[140] *Id.* at 41.

[141] *Id.*

[142] *Id.* at 41, 44.

[143] *Id.* at 42–44.

[144] *Id.*

[145] Reply.

[146] *Harsco*, 475 F.3d at 1186.

The factual basis for Collard's sexual harassment claim is not material to the Motion, however,[147] because the sexual harassment claim has not been challenged in Weir's motion for partial summary judgment. Other than Weir's argument that Collard waived any claim in court against Weir under the Release in the Settlement Agreement for the Trade Secret Action,[148] Weir has not sought dismissal of the sexual harassment claim on summary judgment.[149]

The Motion does seek partial summary judgment only on "the disparate treatment portion of [Collard's] Title VII claim.[150] Weir argues in the Motion that "Title VII sex discrimination claims are subject to the same pretext analysis as claims arising under the ADA."[151] In other words, Weir contends Collard was fired for email forwarding and not on the basis of sex discrimination.[152] Weir misstates Collard's claim, so Weir's argument is misdirected. Collard has not claimed that her termination was based on sex discrimination. Rather, Collard alleges in the Complaint that during her employment with Weir, her co-workers engaged in discriminatory intimidation, ridicule, insult, and offensive behavior toward her.[153] Were Collard to contend that she was terminated on the basis of gender discrimination, that claim would be outside her Complaint, so that contention would be rejected and would not be tried.

Collard retains her hostile environment sexual harassment claim, the damages for which are not related to her termination of employment from Weir.

---

[147] *Anderson*, 477 U.S. at 248.

[148] *Supra* at 11–14.

[149] Motion at 1.

[150] *Id.*

[151] *Id.* at 30–31.

[152] *Id.*

[153] Complaint ¶¶ 49–55; Opposition at 41–44.

**ORDER**

THEREFORE, IT IS HEREBY ORDERED that the Motion[154] is GRANTED IN PART and DENIED IN PART.

- Summary judgment on the basis of release of all of Collard's claims[155] is DENIED.

- Partial summary judgment is GRANTED in favor of Weir. Collard's First Cause of Action for Violation of the ADA[156] is DISMISSED.

- Collard's Second Cause of Action for Gender Discrimination in Violation of Title VII (Sexual Harassment)[157] is not affected by this Order.

Dated August 11, 2017.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[154] Docket no. 16.

[155] *Id.* at 19–25.

[156] Complaint ¶¶ 35–49.

[157] *Id.* ¶¶ 50–62.